UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAHEEK BIN ISLAM,

Plaintiff,

*– against –*

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

Defendant.

**OPINION & ORDER**

26-CV-03682 (ER)

RAMOS, D.J.:

Daheek Bin Islam filed this action against the United States Citizenship and Immigration Services ("USCIS") on May 4, 2026. Islam brings this action pursuant to the Administrative Procedure Act ("APA") to challenge the denial of his Petition for Nonimmigrant Worker seeking E-2 classification pursuant to 8 U.S.C. § 1101(a)(15)(E)(ii).

Islam requests that the Court reverse USCIS' March 26, 2026 denial of his petition. USCIS states that the petition was properly denied. Islam moves for summary judgment, and USCIS moves to dismiss for lack of subject matter jurisdiction, or in the alternative for summary judgment. For the reasons stated below, Plaintiff's motion is DENIED, and Defendant's motion is GRANTED.

## I. BACKGROUND

### A. The E-2 Treaty Investor Visa

Pursuant to the Immigration and Nationality Act, a nonimmigrant foreign worker may apply for status as an E-2 treaty investor. 8 U.S.C. § 1101(a)(15)(E)(ii). The E-2 applicant must establish that he or she "[h]as invested or is actively in the process of investing a substantial amount of capital in a bona fide enterprise in the United States;" seeks "entry solely to develop and direct the enterprise;" and "[i]ntends to depart the United States upon the expiration or termination of treaty investor (E–2) status." 8 C.F.R.

§ 214.2(e)(2). The investment is the applicant's "placing of capital, including funds and other assets (which have not been obtained, directly or indirectly, through criminal activity), at risk in the commercial sense with the objective of generating a profit." *Id.* § 214.2(e)(12). In relation to the requirement that the applicant seeks to develop and direct the enterprise, the "applicant must establish that he or she controls the enterprise by demonstrating ownership of at least 50 percent of the enterprise, by possessing operational control through a managerial position or other corporate device, or by other means." *Id.* § 214.2(e)(16).

The applicant bears the burden of proving his or her eligibility.[1] 8 U.S.C. § 1361; *see Kun Young Kim v. District Director, INS*, 586 F.2d 713, 716 (9th Cir. 1978); *EwelineB Fashion LLC v. Cissna*, No. 18 Civ. 8102, 2021 WL 872947, at *2 (N.D. Ill. Mar. 9, 2021); *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 n.7 (Administrative Appeals Office 2010).

**B. Factual and Procedural Background**[2]

Daheek Bin Islam is a citizen of Bangladesh. CAR 244. He entered the United States on October 23, 2021 as the child of a treaty investor.[3] CAR 55, 292. On August 20, 2025, USCIS granted Islam a change of status to visitor,[4] with a validity period through October 25, 2025. CAR 55.

On September 30, 2025, Islam filed a petition to change his status to E-2 treaty investor as president and chief executive officer of the clothing store Red Ripple, Inc.

---

[1] Islam argues that § 1101(a)(15)(E)(ii) does not require that his assertions in support of his petition be supported by independent evidence. Doc 16-1 at 13. However, it remains his burden to prove his eligibility, and so long as the agency examines the relevant evidence and sets out a rational explanation, the Court will uphold the decision. *See* 8 U.S.C. § 1361; *Karpova*, 497 F.3d at 268.

[2] The facts are drawn from the Certified Administrative Record ("CAR").

[3] Pursuant to 8 C.F.R. § 214.2(e)(4), spouses and children of treaty investors who accompany or join the treaty investor can receive the same classification as the treaty investor. This classification is designated as E-2Y. Doc. 16-1 at 6; CAR 55.

[4] USCIS explains the status is for a "temporary visitor for pleasure." Doc. 18 at 10. This classification is designated as B-2. Doc. 16-1 at 6; Doc. 18 at 7, 10.

CAR 55, 236, 240, 282. In support of his petition, Islam stated he was a fifty percent owner in Red Ripple and that his mother, Sabenoor Rashid ("Ms. Rashid"), was the other fifty percent owner. CAR 245. Islam included stock certificates in his petition, which demonstrated he owned fifty percent of Red Ripple. CAR 298–99.

In a letter of support submitted with the petition, Islam attested that,

> [t]he funds invested by [] Islam in [Red Ripple, Inc.] were provided as a gift from his mother, Ms. Rashid, who is the sole owner of Shebok Corporation. . . . Shebok Corporation is a U.S.-based company engaged in the import of heavy machinery and is in strong financial standing. Ms. Rashid lawfully withdrew $200,000 from Shebok Corporation and deposited the amount into her personal bank account, from which the funds were subsequently transferred into Red Ripple's business account.

CAR 282. The accompanying letter from Ms. Rashid, dated September 23, 2025, stated that she lawfully withdrew the $200,000 from Shebok Corporation ("Shebok"), placed the money into her personal bank account, then transferred the funds to Red Ripple as a gift for her son, Islam. CAR 354.

Shebok's tax returns and relevant bank statements—including from Shebok, Ms. Rashid's personal account, and Red Ripple—were included with Islam's E-2 petition. CAR 356, 358, 362, 367, 374. Shebok's 2024 tax return reported $34,468 in taxable income, CAR 367, and Shebok's 2023 tax return reported $24,773 in taxable income, CAR 374. The bank statements show that on April 11, 2025, a $200,000 withdrawal was made from Shebok's account, CAR 357, and placed in Ms. Rashid's personal account, CAR 359. Subsequently, on April 18, a withdrawal of $200,000 was made from Ms. Rashid's personal account, CAR 359, and placed in Red Ripple's account, CAR 362.

In support of his E-2 petition, Islam also attested that he was in a position to develop and direct Red Ripple because he "demonstrated strong motivation, commitment, and capability to ensure the success of the enterprise" and was "well-positioned to apply his energy, dedication, and adaptability toward the growth of the business, thereby further strengthening the likelihood of success." CAR 282. Islam attested that Red Ripple

intended to hire at least one store manager and two sales associates, paying salaries of no less than $110,000. CAR 282. The business plan attached to the petition also listed an intention to hire one e-commerce coordinator and an additional sales associate in the second year of business, one assistant manager and a marketing and community outreach coordinator in the third year, one inventory and logistics specialist and two additional sales associates the fourth year, and an HR and administrative assistant, along with one additional e-commerce support staff the fifth year. CAR 469–70.

On October 21, 2025, USCIS issued a Request for Evidence ("RFE"), CAR 48, requesting information regarding, among other things, the requirements that Islam invested or was actively in the process of investing a substantial amount of capital in a bona fide enterprise in the United States, and that he sought entry "solely to develop and direct" the enterprise. CAR 50, 52; *see* 8 C.F.R. § 214.2(e)(2).

The RFE also inquired as to whether the $200,000 investment was lawfully obtained, CAR 50, noting that Islam's documentation was insufficient to demonstrate that the funds originated from Ms. Rashid's business. *Id.* In particular, it stated,

> Although your mother's business bank statement[s] show[] a beginning balance of $776,872.09, the submitted bank statement[s] do[] not sufficiently show how her business acquired this amount. While the submitted bank statements covering the period between June 29, 2024, and April 30, 2025, reflect a total deposit of $577,041.78 from "JISRIP PTE LIMITED," "ELROI BERKAI," "ANUGRAH CAHAYA INDO," and "TRANSISI GLOBAL SERV," there [are] no corroborating documents to verify that these deposits are from legitimate business transactions. Moreover, her business tax returns reflect a net income of only $24,773 in 2023 and $34,468 in 2024. As such, the evidence is insufficient to demonstrate how your mother's business accumulated $200,000. Please provide sufficient documentary evidence to demonstrate the origination, accumulation, and path of the $200,000. Any gaps in tracing the funds may lead to questions regarding their actual sources.

CAR 50–51. The RFE instructed Islam to submit additional evidence to support the contention that the $200,000 was lawfully acquired, which could be in the form of, but not limited to: a detailed narrative; copies of wire transfers, checks, or bank statements;

business registration records; tax returns; or invoices from the four companies listed, Jisrip Pte Limited, Elroi Berkai, Anugrah Cahaya Indo, and Transisi Global Serv. CAR 51.

The RFE also questioned Islam's satisfaction of the requirement that he was in the United States solely to develop and direct Red Ripple. CAR 52. It stated:

> you must demonstrate that you do or will develop and direct the investment enterprise through control of the enterprise. Your control of the investment enterprise can be demonstrated through ownership of at least 50 percent of the enterprise, by possessing operational control through a managerial position or other corporate device, or by other means. . . . Therefore, if you are seeking admission in order to primarily engage in skilled and unskilled labor, you are not eligible for the E nonimmigrant visa classification.

*Id.* The RFE also stated that the evidence Islam submitted in support of this contention, including the letter of support, stock certificates, and hiring plan, was insufficient to demonstrate: (1) whether he was remaining in the U.S. "solely to develop and direct" Red Ripple, and (2) how he would develop and direct Red Ripple, especially in the first two years. CAR 52–53. The RFE questioned who would complete the duties of the marketing and community outreach coordinator, inventory and logistics specialist, and HR/administrative assistant in the years prior to their hiring. CAR 53. The RFE also stated that the evidence demonstrated Red Ripple was not hiring or in the process of hiring employees to relieve Islam of primarily performing skilled or unskilled labor, and that the hiring plan did not specify when the employees for the positions listed would be hired. CAR 53. The RFE stated that Islam could submit additional evidence in support of his petition to prove this element, such as a detailed description of his duties, organizational charts, a business plan with hiring timelines and descriptions of employee duties, and employee agreements. CAR 53.

On January 15, 2026, Islam responded to the RFE, including additional evidence to support the petition's contention that the $200,000 investment was "lawful and derived from legitimate business transactions, specifically the sale of heavy equipment," and that

Islam was going to focus solely on developing and directing Red Ripple. CAR 57, 59–60. The evidence included attestations from Ms. Rashid and Shanaj Nizam of NSR Tax & Accounting, Inc. that Ms. Rashid transferred the funds to Red Ripple on behalf of Islam. CAR 82, 88. The evidence included invoices and purchase orders from Jisrip Pte Limited, CAR 67–70; Elroi Berkai, CAR 65-66; Anugrah Cahaya Indo, CAR 63–64; and Transisi Global Serv, CAR 71–72. The evidence also included Red Ripple's balance sheet, reflecting $200,000 entered as "Owner's investment – Daheek Bin Islam." CAR 83.

Islam also submitted a description of his duties and responsibilities to demonstrate how he would develop and direct Red Ripple. CAR 91. The duties and responsibilities fell into the categories of strategic planning and business development, financial management, and operational oversight. *Id.* The duties and responsibilities listed tasks like identifying and negotiating with vendors, suppliers, and service providers for inventory procurement, and supervising and directing store employees. *Id.* Islam included another hiring plan, with a description of the allocation of duties of the planned hires from years one through five. CAR 92–93. Building on the original plan, the new plan included an estimated hiring time for each position and tweaked a few descriptions. *Compare* CAR 469–70 *with* CAR 92–93. Islam also submitted a shareholders' agreement, which listed his fifty percent ownership of Red Ripple. CAR 84.

On February 4, 2026, USCIS issued a Notice of Intent to Deny ("NOID"). CAR 484. The NOID raised issues regarding whether Red Ripple was a bona fide enterprise, and whether Islam controlled the $200,000 investment at any point. CAR 484–86. The NOID again questioned whether Islam established that the $200,000 investment was not obtained through criminal activity. CAR 485. In particular, it stated there was a "discrepancy" in how the funds were described, which called into question whether Islam controlled the funds at all: in the original petition the funds were described as a gift, so they were transferred from Ms. Rashid to Red Ripple, but in the response to the RFE, the

funds were described as a gift from Ms. Rashid to Islam, who had control over them. CAR 485. The NOID stated that Islam failed to establish that he had physical control over the funds or authority over the funds. CAR 485–86. It requested "an explanation and evidence that [Islam had] direct control of the funds at the time of submission." CAR 486. It stated that Islam was afforded time to "submit additional information, evidence or arguments to support the petition." CAR 486. The NOID also expressed doubt that Red Ripple was a bona fide enterprise because the invoices submitted as purchases for the store seemingly had no relation to sales for clothing. CAR 484–85.

On March 6, 2026, Islam's lawyer submitted a response letter to the NOID. CAR 42. The letter stated that the two statements regarding the source of the funds were not inconsistent because Ms. Rashid intended to give the money to her son as an irrevocable gift, and Islam controlled the money. CAR 44. The letter stated that while Ms. Rashid did not transfer the funds to an account controlled by Islam, that the documentary evidence—including the declarations from Ms. Rashid and NSR Tax & Accounting, Inc., as well as the shareholders agreement and the company's balance sheet—reflected the funds were under Islam's name, and proved Islam controlled the funds. CAR 44.

On March 26, 2026, USCIS denied Islam's petition for a change of status, based on Islam's failure to prove (1) a lawful source of the funds, and (2) his capacity to develop and direct Red Ripple. CAR 30–34.

The denial stated that USCIS found that the Islam did not prove that the funds for Red Ripple were not obtained through criminal activity. CAR 30. The denial included a discussion of: (1) the evidence Islam provided in the initial petition; (2) the language from the RFE that the evidence was insufficient to demonstrate that the funds originated from Ms. Rashid's business; (3) the evidence Islam provided in response to the RFE; (4) the language from the NOID that Islam did not prove he had control or authority over the funds; and (5) the attorney affidavit Islam submitted in response to the NOID. CAR 31–32. In particular, the denial stated that the invoices for Shebok's sale of heavy machinery

were "not accompanied by corresponding financial documentation demonstrating receipt of payment or delivery of goods" and that "no corresponding bank or other financial documentation in the record" could substantiate the attestations by Ms. Rashid or others as to the source of the funds. CAR 32. The denial further stated that "statements from [Islam]or [Islam's] accountant constitute mere assertions unless supported by independent, contemporaneous documentary evidence." CAR 32. Thus, the denial stated, the unsupported assertions and other evidence was insufficient to establish that Islam met the burden of proof to demonstrate the funds were not obtained through criminal activity. CAR 32.

The denial also stated that Islam did not prove his control to develop or direct Red Ripple. CAR 32. The denial listed the evidence Islam included in his initial petition—including the letter of support, stock certificates, and the hiring plan—and in his response to the RFE—including updated descriptions of his duties and responsibilities, and an updated hiring plan. CAR 33–34. The denial stated that the evidence did not specify how Islam would develop and direct the enterprise, did not indicate that Islam had hired or was in the process of hiring employees to relieve him of the skilled or unskilled labor associated with Red Ripple, and did not specify who would complete the duties of the employees Red Ripple intended to hire in the third through fifth years of business. CAR 33. The denial further suggested that Islam altered his list of duties and responsibilities to conform to the RFE's concerns about his control to develop and direct Red Ripple. CAR 34. The denial stated that the evidence was insufficient to demonstrate Islam had the control to develop and direct Red Ripple. *Id.*

The denial concluded that Islam had not met his burden, and his petition was thus denied. CAR 34.

## II. LEGAL STANDARD

As a preliminary matter, USCIS argues that this Court does not have subject matter jurisdiction. Doc. 18 at 17. "Determining the existence of subject matter

jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (citation omitted) (describing subject-matter jurisdiction as the "threshold question"). The party asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Morrison*, 547 F.3d at 170 (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). When determining if a federal court has subject matter jurisdiction and standing is challenged on the basis of the pleadings, the Court "accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Connecticut v. Physicians Health Services of Connecticut, Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (citation omitted). The Court, however, does not presume the truthfulness of the complaint's jurisdictional allegations. *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005). The Court should refrain from drawing inferences in favor of the party asserting subject matter jurisdiction on a Rule 12(b)(1) motion. *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000) (citing *Atlantic Mutual Insurance Co. v. Balfour Maclaine International Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

USCIS states that dismissal is appropriate because USCIS' decision regarding Islam's E-2 status is a decision committed to the discretion of the Secretary of Homeland Security under 8 U.S.C. § 1258, and that 8 U.S.C. § 1252(a)(2)(B)(ii) prevents this Court from reviewing the discretionary decision. *Id.* at 17–19. Islam argues that 8 U.S.C. § 1101(a)(15)(E)(ii) and 8 C.F.R. § 214.2(e) provide ample standards against which the Court may review the agency's action, and that the prohibition on reviewing an agency action does not apply to § 1252(a)(2)(B)(ii). Doc. 22 at 7–8.

Pursuant to § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." Pursuant to § 1258, "[t]he Secretary of Homeland Security may, under such conditions as he [or she] may prescribe, authorize" a change to a nonimmigrant's status.

In furtherance of their arguments, both parties discuss *Patel v. Garland*, 596 U.S. 328 (2022). In *Patel*, the Supreme Court found that § 1252(a)(2)(B)(i) "prohibits review of any judgment *regarding* the granting of relief under [the adjustment of status provision, 8 U.S.C.] § 1255 and the other enumerated provisions" and thus, "a noncitizen may not bring a factual challenge to orders denying discretionary relief." *Patel*, 596 U.S. at 338, 340 (emphasis in original) (citation omitted). Contrary to Islam's arguments, this Court has found that the reasoning of *Patel* applies to § 1252(a)(2)(B)(ii) as well, as the provision precludes court review "when a specified statute itself commits a particular decision to the discretion" of USCIS. *Tang v. United States*, No. 23 Civ. 9885 (LTS), 2026 WL 2576823, at *8 (S.D.N.Y. Sept. 1, 2026) (citing *Ruiz v. Mukasey*, 552 F.3d 269, 274–75 (2d Cir. 2009)). In other words, § 1252(a)(2)(B)(ii) eliminates courts' jurisdiction to review decisions that are statutorily specified to be in the discretion of the Secretary of Homeland Security. *See Azatullah v. Mayorkas*, No. 20 Civ. 1069 (MKV), 2023 WL 5935028, at *5 (S.D.N.Y. Sept. 12, 2023), *aff'd sub nom. Azatullah v. Noem*, No. 23-7722, 2025 WL 2407531 (2d Cir. Aug. 20, 2025); *Zia v. Garland*, 112 F.4th 1194, 1200–01 (9th Cir. 2024) (citing *Patel*, 596 U.S. at 347). Section 1258 provides the Secretary of Homeland Security discretion, as it states that the Secretary "*may*, under such conditions as he [or she] may prescribe, authorize" a change to a nonimmigrant's status. 8 U.S.C. § 1258 (emphasis added); *see Tang v. United States*, 2026 WL 2576823, at *11 ("'may,' alone, could be sufficient to suggest[] discretion" and "[o]ther courts have similarly rejected the notion of a canonical requirement that a statute must utilize the

word 'discretion' to be covered by the jurisdiction-stripping provision") (citations omitted).

Thus, the Court lacks jurisdiction to consider USCIS' discretionary denial of Islam's petition seeking E-2 classification pursuant to 8 U.S.C. § 1101(a)(15)(E)(ii). However, "[w]here, as here, a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and [t]he entire case on review is a question of law." *Al-Mashwali v. USCIS*, No. 23 Civ. 7967 (LGS), 2025 WL 872089, at *3 (S.D.N.Y. Mar. 20, 2025) (internal quotation marks and citation omitted), *aff'd*, 2026 WL 1145921 (2d Cir. 2026). Instead of applying the usual summary judgment standard under Federal Rule of Civil Procedure 56, "[t]he APA directs that agency actions be held unlawful and set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Al-Mashwali*, 2025 WL 872089, at *3 (internal quotation marks and citation omitted); *see Egan v. Weiss*, 119 F.3d 106, 107 (2d Cir.1997); *Saleh v. Blinken*, 596 F. Supp. 3d 405, 412–13 (E.D.N.Y. Mar. 30, 2022), *aff'd*, 2023 WL 5091819 (2d Cir. 2023). "[S]ummary judgment is appropriate in APA cases because the questions on review . . . are purely legal and are amenable to summary disposition." *Al-Mashwali*, 2025 WL 872089, at *3 (internal quotation marks and citation omitted).

"[A]n agency determination will only be overturned when the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Karpova v. Snow*, 497 F.3d 262, 267–68 (2d Cir. 2007) (citation omitted). An abuse of discretion may be found where the agency's decision has no rational explanation and is devoid of any reasoning. *Blacher v. Ridge*, 436 F. Supp. 2d 602, 608 (S.D.N.Y. 2006) (citing *Zhao v. U.S. Department of Justice*, 265 F.3d 83, 93 (2d Cir.2001)). "[S]o long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between

the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Karpova*, 497 F.3d at 268.

## III. ANALYSIS

### A. Funds Not Legally Obtained

Islam argues that USCIS' request that he demonstrate that funds for Red Ripple were not obtained directly or indirectly through criminal activity is not in accordance with law because 8 U.S.C. § 1101(a)(15)(E)(ii) does not include such a requirement. Doc. 16-1 at 11 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)), Doc. 22 at 15. However, as USCIS contends in Doc. 18 at 25, the law explicitly maintains that it is an applicant's burden to demonstrate the funds were not obtained from criminal activity. 8 C.F.R. § 214.2(e)(12) (establishing that a treaty investor's investment may not have been obtained through criminal activity); 62 Fed. Reg. 48138, 48142 (Sept. 12, 1997) ("investment funds may not have been obtained, either directly or indirectly, from activities which are, under United States law, criminal in nature"); *see EwelineB Fashion LLC v. Cissna*, No. 18 Civ. 8102, 2021 WL 872947, at *4 (N.D. Ill. Mar. 9, 2021).

Islam further argues that USCIS failed to articulate a satisfactory explanation for its conclusion that the $200,000 invested in Red Ripple was not illegally obtained. Doc. 16-1 at 14. In particular, he points to the documents he submitted in support of his petition, including the relevant withdrawals, deposits, and testimony from Ms. Rashid regarding the gift, and states that USCIS did not consider the relevant data and did not explain the insufficiency of the evidence. *Id.* at 14–15. USCIS argues that the agency acted reasonably in evaluating the evidence and explaining the decision. Doc. 18 at 20; Doc. 19 at 3.

The denial makes clear that USCIS considered the relevant evidence, as it lists out each document submitted in support. CAR 31–34. The RFE and NOID also listed the ways in which Islam could have supplemented the evidence. CAR 51, 53, 486. The

denial stated the documents weren't accompanied by any independent financial records, and the statements provided "constitute mere assertions unless supported by independent, contemporaneous documentary evidence." CAR 32. This consideration of the evidence and explanation of the insufficiency is a rational connection, and renders USCIS' decision outside the realm of being arbitrary or capricious. *See Karpova*, 497 F.3d at 268. *Cf. Soltane v. DOJ*, 381 F.3d 143, 151 (3d Cir. 2004) (finding the agency did not consider all relevant evidentiary factors where the agency did not explain *why* the evidence was insufficient).

**B. Islam's Control to Develop and Direct the Enterprise**

Islam further argues that USCIS failed to articulate a satisfactory explanation for its conclusion that Islam would not develop and direct the enterprise, and that USCIS failed to consider the evidence and instead relied on a *post hoc* rationalization of the decision. Doc 16-1 at 18–21, Doc. 22 at 19–22. USCIS argues that the agency acted reasonably in evaluating the evidence and explaining the decision. Doc. 18 at 28.

The RFE and the denial list the reasons for the decision, in addition to the evidence USCIS considered in evaluating Islam's petition, including the letter of support, stock certificates, and hiring plan. CAR 33, 52. The RFE stated that the evidence was insufficient in part because the letter of support—the one that stated Islam "demonstrated strong motivation, commitment, and capability to ensure the success of the enterprise," CAR 282—did not specify *how* Islam would develop and direct Red Ripple. CAR 52. The RFE further stated that the hiring plan did not specify how the duties of the employees Red Ripple intended to hire in years three through five of operation would be handled in the first two years of operation, and that no evidence supported the contention that Red Ripple was hiring the employees intended for year one to relieve Islam of the skilled or unskilled labor he performed for Red Ripple. CAR 53. The denial also listed the evidence considered, explained that the evidence was insufficient because it did not indicate that Islam hired or was in the process of hiring employees to relieve him of his

labor, and did not specify who would complete the duties of the employees Red Ripple intended to hire in the third through fifth years of business. CAR 33. The denial further stated that the evidence submitted in response to the RFE suggested that Islam altered the duties and responsibilities to conform to the RFE's concerns. CAR 34. The denial stated that therefore, the evidence was insufficient to demonstrate Islam had the control to develop and direct Red Ripple. CAR 34. Thus, the record demonstrates that USCIS considered the evidence submitted and articulated the rational connection between the evaluation of the evidence and the denial of the request. *Karpova*, 497 F.3d at 268.

Finally, Islam argues that the evidence demonstrating that he owned at least fifty percent of Red Ripple satisfies the requirement of § 214.2(e)(14) that he was to develop and direct Red Ripple. Doc 16-1 at 21. In other words, Islam asks the Court to weigh the evidence of his ownership against other evidence to determine that he satisfied the requirements to demonstrate the requisite control to develop and direct the enterprise. *See id.* The Court refrains from stepping outside its review of the agency's exercise of its discretion, and substituting its own evaluation of the evidence for that of the agency where the agency's decision contains rational explanation and reasoning. *See Karpova*, 497 F.3d at 268; *Blacher v. Ridge*, 436 F. Supp. 2d at 608.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED. The clerk of the Court is respectfully directed to terminate the motions, Docs. 16 and 17, and close the case.

It is SO ORDERED.

Dated: September 14, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.